311-0780, Jody Kimbrell, et al., Collins Cross, Eppley's, Wichita, Clackamas. This is Illinois-American Water Company, Eppley, Cross, Bonneville, Kenwood, Jones. He was unavoidably detained and unable to be here for oral argument this morning, so he will be participating. Thank you, Your Honor. You're very welcome. May it please the Court and the Counsel, thank you for having us here this morning. Your Honor, this is, I think, a relatively easy case and somewhat odd. At the summary judgment level, the real issue that IAW and, at the time, Hammer and Silco made was that they had the right from 1960 on, when they built the water main, to have it there. Judge Corey, who ruled on summary judgment, said, no, that's not right. There's been arguments made, and the case was. You didn't have the exclusive right. You were there just by virtue of the highway authority until the vacation by the county in 1982 of the highway. And so, if you have any rights, they start in 1982. The IAW has not challenged that rule here. The judge also ruled in summary judgment for us against Hammer and Silco, and we ended up settling that out. So that leaves just IAW, Illinois American Water Company. And the court, Judge Corey at the summary judgment level, said, I am going to give them the opportunity to try to prove a prescriptive easement from 1982 forward. Now, I have to make one apology. In my brief where I cite the elements from the Thorman v. Cross case in this court, Thorman v. Cross had the elements of adverse possession and prescriptive easement. I just quoted the part from adverse possession, but it's correctly stated in the IAW brief, the four elements for prescriptive easement. And they basically are the same for practical purposes here, which is that the IAW has to prove. There was no doubt that Judge Shore found at the bench trial that we had proven that we owned the property. That is, my client owned the property from 1997 or 1999 forward. There was some problems with the deeds, but from one of those briefs, both. And that, therefore, the burden shifted to IAW, and IAW doesn't dispute this, to prove a prescriptive easement. Now, I would have thought that that sort of ended the case, because my clients didn't acquire the property until 1997 to 1999. And 20 years had been passed, but they clearly filed this case, and I'll talk for a minute about the quiet title action that was in 1999. But certainly… Let me just ask you quick. On prescriptive easements, does the 20 years stop running if there's a change in the fee ownership of the property? It does not, but the reason I thought we had to win was because IAW, who had the burden of proof, had no evidence whatsoever. For two reasons. Had no evidence whatsoever with respect to the prior owners, that is, with respect to the owners who sold to my clients in 1997. They had no evidence when we did the summary judgment briefing. They had no evidence at trial of the knowledge of the prior owners. Now, Judge Schor found constructive knowledge, not actual knowledge, because there's no testimony whatsoever, but constructive knowledge based on a hydrant being there that the prior owners had constructive knowledge of this water main. But these are two very different things. I mean, IAW does a nice job in its briefing at trial of talking about work on that hydrant. But the hydrant, everybody presumed, was a hydrant that ran off the water main that everybody thought ran from University Street. Because remember, the problem here is you have a vacant lot. The reason the lot's vacant is that in 1982, when the county vacated, it moved to University Street. University Street moved, but IAW didn't move its water main at the same time. It just left it there in the middle of these vacant lots. And the key to it being vacant lots, and this is critical, is that before I even get into talking about the knowledge of the prior owners, the case law is clear that when you talk about vacant lots, the presumption is that the use is permissive. Well, is that really true? I mean, those cases that you cite are, and we've had a few here, are rural. You know, like a guy's got 160 acres or hundreds or thousands of acres, and if somebody's out there using a Back 40, which is maybe a mile and a half from his home, he isn't going to know. I mean, aren't all those cases like rural, like farms and that type of thing, as opposed to vacant lots inside of a city? Well, the Langby Steward case wasn't, and the court there ended up finding that it wasn't vacant lots. But there, because there was a fence, and there was very near, relatively 550 feet from the home, but there the reason the court found that it wasn't vacant, because it's vacant and unenclosed. And these vacant lots are vacant and unenclosed. And I think that, I mean, the doctrine, there's no reason for the doctrine not to apply, and in fact, the doctrine's very important, because there was no reason for these, for the prior owners to object to do the things you do to condemn. Have you ever seen that doctrine applied in a situation like this? Outside of farmland? No. No, I mean, except in the Langby Steward case, they discussed it, but discussed the reason why it didn't apply. It didn't apply in that case. Because it was enclosed, because it had the gate, and because the property wasn't used, it wasn't vacant. I mean, you'd agree that almost all the cases that talk about that are all farmland. I mean, they're all farmland cases, aren't they? Yes. Where they apply the doctrine. Yes. But I think the doctrine applies, and I think it makes sense here. But even beyond that, with respect to the prior owners, there's no evidence whatsoever. I mean, in order to prove adversity, and that's really the issue here, with respect to the prior owners, they have to find, the court would have to find that this water main, this long water main, was open and notorious. And it just wasn't. It was underground. They'd also have to prove that the prior owner didn't want it on his property. Right. And the problem is, the only evidence, and actually IAW puts it in, is that the prior owner had asked for a connection from the water main to his property. So there's just no evidence that there was acquiescence, but lack of permission. With respect to the prior owners. Now, so, the court, the trial court found it, but there was no evidence in the record whatsoever as to the prior owner's knowledge or the open and notorious nature of this. Well, constructive knowledge is an interesting concept, isn't it? You can have constructive knowledge from a variety of circumstances where you make the inferences with regard to knowledge, correct? I agree. Constructive knowledge is an interesting issue. It's a legal issue, but in the cases that I cite, I mean, the constructive knowledge from a hydrant, I mean, there's no case law that just because there was a hydrant in one little part of a property way to the side, that that would give constructive knowledge of a large 16-inch, I think it was, water main running through two commercial... Well, what do you think it gives constructive knowledge of? Well, of the fact that there is a, some, the way most of the water lines work, and in fact the way the water line works at the jet port apartment, running from the main water main to the hydrant. I mean, that wouldn't give constructive knowledge of a large water main running through the entire property. I mean, that would be a guess. I mean, it would impose a duty to go out and find the water main, and there's just no evidence of it. There's no case law suggesting that kind of duty to go and... My clients did what you would do. They checked the records for easements, and they checked the recorders, and there was no evidence of an easement whatsoever. Well, let me ask you, on that line, too, something else I have a little trouble wrapping my brain around is the concept of acquiescence but not permission. I mean, if I sit on my front porch and watch you trespass on my ground every day and come on there and do something on my property every day and I wave at you, I mean, a reasonable person would assume that you have my permission, too, but the law seems to call it acquiescence but not permission. So how has the permission got to be expressed? Well, here I don't know how they could get permission exactly for the water main, because nobody had any idea that it was there. Well, you don't know whether, but you don't know what the prior owner knew either, do you? We have no evidence whatsoever, which is why I don't know how the trial judge made factual findings from 1982 to 1999. Now, let me say to you... But he used constructive knowledge. He used constructive knowledge. That's how he did it. Right, right, but without any evidence as to what they knew, even about the hydrant, because remember, the trial judge agreed that when my clients acquired the property, it was overgrown, it was a vacant lot that was overgrown, covered with debris. There was no evidence even that the prior owners knew about the hydrant. I mean, you don't go to constructive knowledge when there's actual knowledge, and you don't have actual knowledge in this case. Exactly. You have constructive knowledge. Exactly, on the part of the prior owners. Now, my clients did discover the hydrant. But as soon as my clients discovered the hydrant, they filed a claim of right of ownership, and they also filed the quiet title action. Now, there's some issue as to whether the quiet title action is binding because of whether actual notice should be given versus publication notice. And I think the law is clear that IAW procedurally missed it. The law is clear under Sarkeesian. If they wanted to challenge the nature of the notice, they had to go to 214.01. That was the way to do it. They could have brought a 214.01 action back in that, in the case where the quiet title judgment was entered and challenged it that way. The Illinois Supreme Court has said, that's the way you do it. If we're talking about that previous quiet title, does that only apply to them if they're unknown owners? They weren't named in that suit. Right. Right. They got a fine if they were unknown owners, right? Right. And Judge Corey said they weren't because of the hydrant. So they should have been served. Of course, that was, you know, my clients believed that at the time that the hydrant was owned by Gaslight. That is, that the line ran in exactly the place where the water line ran everywhere else, under University Street, and that there was a small service line up to the hydrant going into Gaslight, the other apartment. I'll say it, too. Thank you. So they thought the hydrant belonged to Gaslight? So they believed that the hydrant belonged to Gaslight, and so when they gave actual notice to Gaslight, they just published notice as to anybody else, which would include the utility companies. But let me say this. Even if the quiet title judgment isn't binding, one thing under the Rugg case and the Sparling, the Fond du Lac case that's clear is that an objection, once you object, it defeats permission. And nothing could be clearer that my clients could have done than filing the quiet title action. I mean, short of actually going in and starting digging up the hydrant and digging up the line, any lines around the hydrant, my clients filed the quiet title action to establish, and they very clearly, that they were objecting to any other claim, unrecorded claim on the property. So even if it's not binding as a matter of res judicata, it defeats the easement under the clear holding that once you object, the time for the passage of the prescriptive easement stops. So I think my clients have to prevail on the prescriptive easement issue, both because there's no actual, and I think no reason, to draw constructive knowledge of this water main with respect to the prior owners. And with respect to my clients who did discover the hydrant, as soon as they discovered it, they objected. They objected to anybody. They sure, Gaslight is actually, they thought, owned it. But they also gave notice to the world, published notice to the world,  Thank you, counsel. Mr. Jones. Thank you, Your Honor. May it please the court, counsel. In 1960, Your Honor, Illinois American Water installed a 16-inch water main in the right-of-way of North University Street in Peoria. In 1976, Illinois American installed a fire hydrant on that main, a bright yellow fire hydrant that sits three feet out of the ground. And in fact, Mr. Bachman admits in his brief, that the plaintiffs are not contesting that they knew about the existence of the fire hydrant. That fire hydrant is connected to something. It's connected to a water main. Water doesn't come out of nowhere. The water main is connected to the hydrant. The plaintiffs had knowledge of that hydrant, given all the facts that were presented at trial, and that as just short rule. Justice Carter, you raised the issue of constructive knowledge. And as this court pointed out in the Sparlin case, it's not even constructive knowledge that is required. The court said that a property owner's knowledge of the use by the adverse party may be inferred from the manner, the character, and the frequency of the public's use. And that's what we have here. We focus on the actions of the adverse user, not on the subjective knowledge of the servient landowner. In that case. Well, constructive knowledge is about inferences, isn't it? I'm sorry, Your Honor? Constructive knowledge is about inferences. Correct. Inferences from what the adverse user is doing. And inferences from what Illinois American had been doing since at least 1982, when the right-of-way was vacated. Also, another Illinois appellate court, the First District, said we find that the correct test for open and notorious is whether the community in the vicinity of the landed issue is or could be apprised of defendant's possession and exclusive use and enjoyment. Again, it's not the subjective knowledge of the owner. It's not the mistake of fact by the owner of who owns the hybrid, who doesn't own the hybrid. It's the actions of the adverse user that imply the adverse use. Let me ask you, though. If I go out and buy a piece of property or anybody and there's a fire hydrant at the edge of your property and there's a right-of-way along there, does that put you on a duty to go search your property for a water main? Isn't it almost universally accepted that those water mains are going to run along the right-of-way? Given the facts in this case, let me just back up a little bit, Your Honor. The fact of the hybrid itself is a claim of open and notorious use of the property. So at the very least, we have adverse possession of the area around the hybrid. I mean, that's not even in question in this case. And given the facts of this case, first of all, that the hybrid is connected to something, and as the plaintiffs themselves filed numerous documents showing that they and the reservation in the 1982 resolution by the County of Peoria that the rights of utilities in the right-of-way were preserved, the plaintiffs themselves knew that. So that should have given them, as Judge Shore found, should have given them the reason to go and do a further search, as they did actually in 2008. And all they had was their engineer go out with a metal detector and found the water main. So in this case particularly, the existence of the hybrid shows the existence of the water main underneath. Well, I guess, I mean, wouldn't it go down to what a reasonable person would do with the knowledge? I mean, is it unreasonable to assume that the main runs along the right-of-way, that when they moved the right-of-way that it moved the water main too? Is that normally what happens? Well, then the hybrid would move too, Your Honor. There aren't 30, 40 feet lines where the right-of-way was to connect the hybrid. And that's what happened here. The road moved. The main and hybrid didn't move. And it's noticed to the public that the main is still there where the hybrid is located. And, Your Honor, regarding previous owners, as Judge Shore found, there was greater than clear and convincing evidence about the use since 1982. There's a litany of facts that the Illinois American Water employees would perform annual maintenance on the hydrant. They would go and drive in their company vehicles with Illinois American logos to the property, parking the street. They would flush the hydrant. They would open the hydrant. They would release 100 to 500 gallons of water over 10 to 20 minutes. They would check the flow rate and the pressure coming from the hydrant. They also regularly cleared and mowed the area immediately surrounding the hydrant. So even from 1982 on when the right-of-way was vacated and the road was moved, there was clear and convincing evidence in the record of facts showing that there was an adverse use of the property. Even getting to Ms. Kimbrell herself, when she acquired the property, she complained of extensive flooding coming out of the main on the property. So even there, that's a fact that Judge Shore also pointed out, showed that there was knowledge by the plaintiffs of the adverse use and the existence of the water. There was also some discussion, Your Honors, regarding the vacant land. And I think, Justice Carter, you hit the nail on the head there. This only applies when there are large tracts of land. It's a rural area. And the courts say that the owner, and I think the language is important, the owner may not know or even care that anybody is using their property. In this case, it's not a rural, it's not a wild land. What we have here is a metropolitan area in Peoria, which is bound on one side by North University Street, which is heavily traveled, bound on other sides by major apartment complexes. This is not wild rural land to which this presumption would apply. It's hard to say any rural land is wild today, but go ahead. You're probably correct there, Your Honor. And one thing we didn't touch on, we haven't touched on yet, is the experience and expertise of Ms. Kimbrell as a real estate expert. And I think that was very important to Judge Shore also. Ms. Kimbrell is a licensed real estate broker. She considers herself, she admitted in her testimony, that she's an expert in the buying and selling and appraising of real estate, which leads one to believe that she should have known, the fact that the hydrant was there, she should have at least gone to investigate the existence of the waterway. There are some points in the brief about Ms. Kimbrell not knowing that the hydrant was there because the lot was overgrown at the time of the purchase. But even if that were the case, the case law in Illinois is very clear that having an overgrown lot does not provide the landowner, the buyer, the opportunity to disclaim any ownership of the ever's use. If you take a look at the Beverly Trust case, the plaintiff, the landowner there, admitted that he walked the property before purchasing it, but did not see the fence because the property was, quote, overgrown with bushes and trees. And the court said, here, you can't get around ever's use by claiming that the lot is overgrown. And that's what Ms. Kimbrell is attempting to do here, and that should not be permitted. Let me just add, when we go back to the prior owner, or say whoever owned it when they moved that city or county, I guess moved the University Street over. I'm just trying to figure out why a young American wouldn't move that water main when he moved to Ryanwood. Because somebody is now owning that property, right? Correct. And now you've got a water main running through a piece of basically a commercial. In 1982, the North University area wasn't much different than it is now. It was more developed up there, but those apartments were there. Correct. Or even 76, or whenever they actually started, it was 76. Well, at 60, the main was installed. At 76, the hydrant was installed. So it's hard to imagine why they didn't move that water main when the right-of-way moved if the person that was left with the ownership of that property didn't say, eh, leave it there. Well, I think what you can assume, Your Honor, is that it was an adverse use. One might think that the water main would be moved, but Illinois Americans decided, no, we're going to stay here. We have a right to be here, and we're not going to move it because it's expensive to move a water main. We haven't introduced evidence in this case because damages are not at issue at this point. But it's very expensive to move a water main. So Illinois Americans made the conscious decision back in 1982 not to move that water main, and then that's when the adverse use, the adverse possession began. And as annually and more often Illinois American water employees went out there to flush the hydrant and do maintenance on the hydrant, each time they reinvigorated, really, their adverse use, their adverse possession. And it's also interesting, Your Honor, that the 1982 resolution didn't require the movement of the water main. When the Illinois American originally got the permit in 1960, there was language regarding if the main has to be moved, it's at the expense of the Illinois American. And usually when there is a street relocation, the water mains and the other utilities have to be moved too because they're in conflict with construction. But here it wasn't the case, and so here the main was left where it was. And since the construction of the road, the reconstruction of the road, did not require relocation of the hydrant, the Illinois American made the conscious decision not to incur that cost and to stake a claim on the property where the water main lay at the time. Your Honor, we're getting towards the end of my time. I just want to touch briefly on the issues of the quiet tile case. As the discussion was before, Judge Corey came to the conclusion that the utilities were known owners at the time, and therefore the quiet tile judgment did not apply to the utilities. And Judge Corey laid specific stress on the affidavit of the prior attorney for Ms. Kimbrell when they filed the quiet tile case. The attorney, Howard, subsequently made an affidavit that he, in fact, was aware of the utilities on the property but did not contact the utilities in connection with that case. The conclusion of the court was that the utilities were known owners, and therefore the quiet tile case did not apply to them. And that reasoning also goes into the Section 2, 1401 theory that Mr. Bachman has raised. In order to avoid the trial court's judgment that Illinois American Water proved its affirmative defense of prescriptive easement, they raised these couple of legal issues that are not controlling. Mr. Bachman says that Illinois American should have filed a motion for relief from the 12-year-old quiet tile judgment rather than the affirmative defense of prescriptive easement. But that fails for several reasons. First of all, that argument was never made at trial, and so it's waived. Secondly, the argument is contrary to logic. The trial court in this case ruled that the utilities were known owners and therefore should have been joined in the quiet tile case. Now, since they were not parties to that case, they didn't know about it, and res judicata doesn't apply. And given that they didn't know about the quiet tile case, how could they have sought relief from a judgment they didn't even know about? And third, Illinois American is not seeking relief from the quiet tile judgment. It's asserting an affirmative defense of prescriptive easement to a trespass case that the plaintiffs have filed. And really what's sauce for the goose is sauce for the gander. You know, the plaintiffs now say that we should have filed a motion for relief from the quiet tile judgment, but why didn't they file a motion to enforce the quiet tile judgment? Instead, they filed a trespass suit. Illinois American is simply responding to the case and the facts as presented by the plaintiffs. How much of that argument you just made doesn't go to your cross appeal? I think there are different situations, Your Honor. Adversely. Yeah, I think there are different situations because we are found to be unknown owners in the cross appeal, and I hope to save a little bit of time for that after this. In the cross appeal, we're focusing again on the adverse use, the acts of the adverse user from which owners can infer. And so, therefore, it's a different situation. You're trying to reach out to non-named, non-served parties, aren't you? Well, I think you can look at it this way. Those parties, those non-named parties, were reached out to over the 30 years that Illinois American was taking these adverse actions on the property. And that's really the point on the cross appeal, Your Honor. And again, on this quiet title issue, the 1401 argument, again, there's no case law to support the plaintiff's contention that a party was improperly left out of a quiet title case cannot assert an affirmative defense of prescriptive easement in a trespass case. And the same thing applies to the idea that a quiet title suit might be an objection to the use. First, again, this argument was not raised at trial, so it's waived. But secondly, it also makes no logical sense. Finish your thought. Yes, Your Honor. If the utilities were known owners at the time and should have been joined in the quiet title case, how can a lawsuit filed against unknown owners constitute an objection to their presence? The court found that they were known owners, and by calling them unknown owners is just logically inconsistent. Thank you. Thank you, Mr. Jones. Mr. Machman. Very quickly on the quiet title action, Your Honor. We wouldn't have raised it at trial if it was a finding of this court at summary judgment that it wasn't a matter of defense to the prescriptive easement. It was a matter of he found that they weren't bound at the summary judgment level, and he didn't make that a factual finding. Now, if it had been brought under 214.01, where it should have been brought, and when we raised that issue back at the summary judgment level, and this is the first time waivers have been raised with respect to that issue. If it had brought... We could have brought out the fact that the reason that our attorney didn't serve the IAW was because we believe the hydrant belonged to Gaslight, that there was a service line running up to Gaslight through the hydrant, which is why you wouldn't necessarily, getting back to another argument that my colleague raised, Mr. Jones, which is why you wouldn't assume just because there's a hydrant there that there'd be a water main there, because you might leave the hydrant to provide fire service for Gaslight and the other areas around, but not a full water main. A hydrant, just a simple hydrant, which is usually connected by a small water line, would not give noticeably long water main running through two commercial lines. I mean, the effect of Judge Shor's ruling is effectively to render unusable to now commercial lots as a result of a vacation by the county. And as to that vacation resolution, that issue has been resolved and not challenged. Judge Corey resolved that no rights were acquired by the 1982 resolution. Because if you read the resolution, it only preserves existing easements. They didn't have an easement. They didn't record an easement, that is IAW. And Judge Corey found that hasn't been challenged on appeal. The whole period we've been talking about is 1982 forward, and you can't find 20 years, because the prior owners didn't have actual knowledge of the water main, or I would say constructive knowledge of it, from the fact that there was a hydrant way down on the vacant lot down south. And as to my clients, Mr. Jones said, we've agreed, but we haven't. As soon as we found the hydrant, we objected through the filing of the quiet tile. Actually, we objected to anybody, Gaslight or the utility company, anybody asserting an unrecorded claim to, and we thought Gaslight owned it, but an unrecorded claim. And that, under Brock and the other cases, defeats the prescriptive easement. Certainly 20 years haven't passed in any event since 1997. How many hydrants does Gaslight own? Quite a number, but we didn't put that on the record. But there was one, that one that was there, that was available to service them. So to say that a fire hydrant is there for the protection of the community gives notice of a water main that's being used for a totally different purpose. I just think that's a logical leap that's just not supported by the case law. And I think the court erred in finding a prescriptive easement here. All right. Thank you, Mr. Beckman. Thank you both for your arguments here this morning. As I indicated previously, Justice Holbrook will be participating in our discussions. A written disposition will be issued after we all have an opportunity to discuss this matter. Right now, the court will be in a brief recess for a panel change before the next case.